IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-02558-CNS-TPO

JESSICA EDGAR,

    Plaintiff,

v.

ADVANCED EXTERIORS, INC., a Colorado corporation and
TYLER CORREY,

    Defendants.

# ORDER

Plaintiff Jessica Edgar brings this lawsuit against her former employer, Defendant Advanced Exteriors, Inc., and its owner and president, Defendant Tyler Correy, for allegedly violating various federal and state employment laws. Defendants now move for summary judgment on Plaintiff's five claims for relief. ECF No. 96. Plaintiff responded in opposition, ECF No. 113, and Defendants replied, ECF No. 115. Plaintiff also filed a summary judgment motion. She moves for partial summary judgment on Defendants' after-acquired evidence defense. ECF No. 99. Defendants responded in opposition, ECF No. 114, and Plaintiff replied, ECF No. 116. The Court has carefully studied the arguments raised by the parties and concludes that the competing motions are laden with genuine fact disputes, rendering summary judgment inappropriate. The Court thus DENIES both motions.

1

# I. FACTUAL BACKGROUND[1]

## A. The Parties

Defendant Advanced Exteriors, Inc. (AEI) is a roofing and remodeling business, and Mr. Correy is the founder, owner, and president of AEI. ECF No. 96, ¶¶ 8–9. Ms. Edgar worked for AEI from May 2013 to February 2022, first as AEI's Receptionist (2013 until January 2016), then as AEI's Assistant Office Manager (February 2016 until October 2020), and finally as AEI's Accounts Manager (November 2020 to February 2022 when her employment with AEI ended). *Id.*, ¶¶ 10–14.

## B. Ms. Edgar and Mr. Correy's Sexual Relationship

After Ms. Edgar's promotion to Assistant Office Manager in February 2016, Ms. Edgar contends that Mr. Correy extorted sex from her, which continued once or twice per month until the end of 2017. ECF No. 113, ¶ 1 (Plaintiff's Statement of Additional Disputed Facts) (citing Plaintiff's interrogatory responses).[2] Ms. Edgar states that she complied with Mr. Correy's demands for sex, fearing termination or a reduction in compensation if she did not acquiesce. *Id.* (citing Plaintiff's deposition testimony). Ms. Edgar explains that Mr. Correy knew that she was a single mother with three children whose only source of

---

[1] The Court draws the background facts from both sides' motions. Where applicable, the Court notes the facts that the parties dispute. Whether the Court draws the facts from Plaintiff's or Defendants' briefs, it construes the factual record and reasonable inference in the light most favorable to the nonmoving party or parties. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).

[2] Defendants do not dispute these facts in any material way, other than arguing that the "only evidence provided by Plaintiff to prove this point aside from her own allegations strongly contradicts her claims." ECF No. 115 at 4. But nothing in Defendants' motion or reply directly rebut Plaintiff's sworn interrogatory responses. Even if none of "Plaintiff's witnesses (see SUDF 42) attest that they have [] witnessed any sexual behavior between Mr. Correy and the Plaintiff," ECF No. 96, ¶ 43, that does not mean that it did not happen. Defendants do not even cite to a sworn declaration or interrogatory response from Mr. Correy rebutting these facts.

2

income was her job at AEI. *Id.*, ¶ 2. To that end, Ms. Edgar argues that Mr. Correy created a system to maintain financial control over her. *Id.*, ¶¶ 5–8.

Moreover, Defendants admit that Mr. Correy denied Ms. Edgar's requests for raises for four years. *Id.*, ¶ 6. He instead

> devised alternative compensation forms to deepen her indebtedness to AEI and Correy's control over her, ordering Plaintiff to:
>
> - Purchase a used car from his friend and informing her that AEI would pay the car loan payments to her bank directly. (Ex. 4 at 156:9-16).
>
> - Accept monthly rent payments from AEI to her landlord as an advance on bonus. (*Id.* at 127:6-11).
>
> - Show Correy her credit card statements for payment by AEI when she needed financial assistance. (*Id.* at 154:15-18).

*Id.* By October 2020, Ms. Edgar's debt to AEI equaled $15,000. *Id.*, ¶ 7.

Later, within days of promoting Ms. Edgar to Accounts Manager, Mr. Correy demanded sex of Ms. Edgar again and refused to negotiate her pay raise until January 2021. *Id.*, ¶ 12. She again complied fearing termination. *Id.*, ¶ 13. Ms. Edgar had coerced sex with Mr. Correy two to four times per month from October 2020 through May 2021. *Id.* In May 2021, Mr. Correy forced Ms. Edgar to perform oral sex on him in his truck after discussing her compensation. *Id.* Ms. Edgar contends that he continued to make these demands up through December 2021, something Mr. Correy denies. *Id.*, ¶ 18.

Mr. Correy does not appear to dispute the sexual relationship that he had with Ms. Edgar. Instead, Defendants appear to argue that Ms. Edgar was in love with Mr. Correy. ECF No. 96, ¶ 44 ("Plaintiff's witnesses also attest to Plaintiff saying that she was in love

3

with Mr. Correy and unsuccessfully trying to sleep with him."). Defendants cite numerous text messages from Ms. Edgar to Mr. Correy to support this point, including:

- Ms. Edgar writing "Love your face" with heart eyes emoji;

- Ms. Edgar writing that "we need to have lunch together sometime soon" with an image of kissing lips;

- Ms. Edgar writing "xoxooxo" and sending Mr. Correy an "I love you valentine" gif; and

- Ms. Edgar writing "love your face" and "XOXOXOXOXOXOXOXO."

*Id.*, ¶ 45. Ms. Edgar admits to sending these messages, but she denies sending "flirty messages *only* to Correy." ECF No. 113, ¶ 45 (emphasis added). Ms. Edgar alleges that Mr. Correy subjected her to sexual harassment at various times between 2016 and 2017 and then again between October 2020 and February 2022. ECF No. 96, ¶ 50.

### C. Wage Advances

AEI had a history of providing various employees advances on future wages when they requested it, including Ms. Edgar. ECF No. 96, ¶ 33. Ms. Edgar testifies that she "had to go and beg for an advance so that [she] could continue to live." *Id.*, ¶ 34 (quoting ECF No. 96-8 at 176:1–2). AEI argues that it ultimately waived the amount that Ms. Edgar owed to it through these advances. *Id.*, ¶ 36. Ms. Edgar generally does not dispute this, but she contends that the debt she owed AEI added to the coercive nature of her relationship with Mr. Correy. ECF No. 113, ¶ 36 ("[A]fter years of financial and sexual coercion, Correy waived Plaintiff's $25,000 debt to AEI in late December 2021."). Ms. Edgar states that she felt that she could never leave AEI due to her debt and that AEI

would sue her if she left the company. *Id.*, ¶ 17. She notes, however, that AEI forgave other employees' debts at the end of each year, unlike her debt. *Id.*, ¶ 20.

### D. Ms. Edgar's Claims

Among other things, Ms. Edgar claims that Mr. Correy, as her supervisor and president of AEI, created a hostile work environment that resulted in her continued sex discrimination and ultimate termination after she complained about the discrimination. She argues that her performance was not at issue; indeed, Defendants admit that AEI gave Ms. Edgar an "exceeds expectations" rating in 2017 and 2018, the only years that she received written evaluations. ECF No. 113, ¶ 4. She contends that Mr. Correy ran her out of the company after she reported their relationship on February 3, 2022. *See* ECF No. 113, ¶ 27.

### E. Ms. Edgar's Sexually Inappropriate Statements to Subordinates and Coworkers

Ms. Edgar acknowledges that three AEI employees attest that they heard her make sexually inappropriate comments at work. ECF No. 99, ¶ 8. For example, Dani Vienot testified that Ms. Edgar told other employees that she and Ms. Vienot were lesbians, and that Ms. Edgar would talk about the size of her partners' penises. ECF No. 114, ¶¶ 5–6. Alex Heckenkamp testified that Ms. Edgar made similar comments to her. *Id.*, ¶¶ 7–8. And Melissa Johnson described in her affidavit that Ms. Edgar told her that (a) Ms. Edgar wanted to sleep with Ms. Johnson "because she always wanted to be with a redhead," (b) Ms. Edgar wanted Ms. Johnson to participate in a threesome, and (c) Ms. Edgar could not "focus on her work because of the sex she recently had." *Id.*, ¶¶ 10–11.

5

### F. Ms. Edgar's Drug Use

Ms. Edgar admits that at least one witness testified that, while she was employed at AEI, she would steal employees' Adderall and snort it. *Id.*, ¶ 13. Ms. Edgar also testified to using marijuana, Adderall, and pain medication. ECF No. 114-21 at 41:3-10 (Q: What other drugs have you used illegally? A: Illegally? I guess marijuana wasn't legal at some point, so I'm sure I've used marijuana. As you and I have talked in the past, I took a couple of Mary's, whatever they were called, Adderalls. And probably pain medication . . . ."). Ms. Edgar also admits that at least one witness has testified that she was constantly high on hashish while interacting with AEI clients. ECF No. 114, ¶ 13; ECF No. 99, ¶ 21 (Ms. Edgar admitting that Brendan Christensen, who she describes as her supervisor, observed Ms. Edgar "consume [hash extract] throughout the day" and was "not aware of an instance where she wasn't" "high on hash extract").

### G. Ms. Edgar Launches New Business

In January 2022, Ms. Edgar filed Articles of Incorporation with the Colorado Secretary of State for her new bookkeeping business. ECF No. 113, ¶ 53. The parties dispute whether Ms. Edgar told multiple coworkers that they should leave AEI to work for her instead. ECF No. 96, ¶ 52 (citing declarations from two AEI employees); ECF No. 99, ¶ 15 (Plaintiff acknowledging that two AEI employees attested that Plaintiff attempted to persuade them to work for her new business instead of AEI). Ms. Edgar also acknowledges that several AEI employees attested that she wanted to work remotely

while at AEI because, among other reasons, she was starting a bookkeeping business.[3] Ms. Edgar denies that she tried to recruit AEI employees, but as noted, she acknowledges that certain employees attested to the contrary. ECF No. 113, ¶ 52.

### H.     The End of Ms. Edgar's Employment at AEI

Ms. Edgar's employment at AEI ended on February 3, 2022. ECF No. 96, ¶ 55. That day, Ms. Edgar met with Mr. Correy and Mr. Paryzer. ECF No. 113, ¶ 27. Apparently for the first time, she disclosed their relationship, stating: "You came on to me again . . . and we had sex in the office multiple times . . . last year." "[T]here was many a times that you – 'Hey Jess, you staying late tonight?' . . . and I felt like I had to . . . I didn't want to stay and have sex. I wanted to go home, but I did it anyway." *Id.* Defendants do not dispute that she said this. ECF No. 115 at 4. Ms. Edgar states that Mr. Correy denied any sexual misconduct at that meeting, but it is undisputed that her employment ended that day.

Defendants contend that she resigned. *Id.*, ¶ 55 ("On February 3, 2022, Plaintiff told Mr. Correy and Kevin Paryzer (AEI's Office Manager) that she had made the decision to leave the company."); *id.*, ¶ 59 (citing various employees' affidavits that Ms. Edgar told them that she had quit or resigned); *id.*, ¶ 63 ("On or about February 9, 2022, AEI's legal counsel advised it to issue Plaintiff a letter stating that it understood her to have resigned."). Ms. Edgar admits that on February 3, 2022, she told Mr. Correy and Mr. Paryzer that "I will be leaving the company after 9 years." However, she contends that, "[a]t that time I had worked for the company for eight years; therefore, I was stating my

---

[3] The parties also dispute whether Ms. Edgar was inappropriately using her management authority to give extra jobs to her husband's crew so that she would benefit personally. ECF No. 114, ¶ 14.

7

intention to continue working at AEI through the end of 2022." ECF No. 96-7 at 13 (Ms. Edgar's answer to Defendants' request for admission no. 5). Ms. Edgar contends that AEI terminated her. ECF No. 113, ¶ 59 ("Deny. Plaintiff never resigned.").

### F. Ms. Edgar Initiates Legal Proceedings

Ms. Edgar filed charges of discrimination against the Defendants on June 1, 2022. ECF No. 96, ¶ 1. She then initiated this lawsuit against Defendants on September 29, 2023, alleging five claims for relief: (1) sex discrimination against AEI in violation Title VII of the Civil rights Act of 1964 and the Colorado Anti-Discrimination Act; (2) retaliation against AEI in violation Title VII and CADA; (3) aiding, abetting, and coercing sex discrimination against Mr. Correy in violation of CADA; (4) interference with performance of an employment contract against Mr. Correy; and (5) intentional infliction of emotionally distress (outrageous conduct) against both Defendant. *Id.*, ¶¶ 2–7.

## II. LEGAL STANDARDS

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003) (internal quotations and citation omitted); Fed. R. Civ. P. 56. The factual record and reasonable inferences must be construed in the light most favorable to the nonmoving party. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The moving party bears the initial burden, but once met, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477

U.S. 242, 256 (1986). Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

### III.  ANALYSIS & ORDER

#### A.  Defendants' Motion for Summary Judgment (ECF No. 96)

Defendants move for summary judgment on each of Ms. Edgar's five claims for relief. Having reviewed Defendants' arguments and Ms. Edgar's response, the Court concludes that each claim presents sufficient factual disputes to preclude summary judgment.

As to her first claim for relief, the Court declines Defendants' request to limit her claims to the various limitations periods. ECF No. 96 at 12–13. Mr. Correy's alleged conduct for unwanted sex establishes a continuing violation. Defendants may argue at trial that the sexual relationship ended roughly two years before Ms. Edgar's separation in February 2022, and that she did not raise concerns with HR until that time. However, both the reasons for her delay and the actual end date of the sexual relationship present genuine factual disputes for the jury to resolve.[4]

---

[4] For this reason, the Court rejects Defendants' argument that the *Faragher/Ellerth* defense precludes Ms. Edgar's sexual harassment claim. The Court has already determined that that defense is inapplicable under the facts of this case, and nothing in Defendants' briefs alters that finding. ECF No. 90; *see also Whitson v. Bd. of Cnty. Comm'rs of Cnty. of Sedgwick*, 106 F.4th 1063, 1072 (10th Cir. 2024) ("[I]n the course of determining when an employer can be liable under Title VII for a hostile work environment, the [Supreme] Court noted that an employer can be liable 'even where employees commit torts outside the scope of employment,' when the employee's 'high rank in the company makes him or her the employer's alter ego.' *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 758 (1998). Surely, a municipality can be liable for the torts of its alter ego. And surely, the Sheriff of Sedgwick County is the alter ego of the Sheriff's Department.")

Defendants also argue that summary judgment is warranted on Ms. Edgar's retaliation claim because she resigned and thus they did not take any adverse employments actions against her. As explained above, whether Ms. Edgar resigned, or whether AEI terminated her, is a fact dispute for the jury to decide.[5]

Defendants next argue that Ms. Edgar's fourth claim for relief is legally and factually groundless. ECF No. 96 at 19. The Court does not agree. To prevail on her claim for intentional interference with contract,[6] Ms. Edgar must prove that Mr. Correy "(1) was aware of the existence of the contract; (2) intended that one of the parties breach the contract; (3) induced the party to breach the contract or make it impossible for him or her to perform; and (4) acted 'improperly' in causing the breach." *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1118 (10th Cir. 2009) (quoting *Krystkowiak v. W.O. Brisben Cos.*, 90 P.3d 859, 871 (Colo. 2004)). As Ms. Edgar correctly notes, Colorado courts have held that "a contract terminable at will is entitled to protection from tortious unwarranted interference from third parties . . . ." *Ramirez v. GEO Grp., Inc.*, 655 F. Supp. 2d 1170, 1190 (D. Colo. 2009) (quoting *Bithell v. W. Care Corp.*, 762 P.2d 708, 712–13 (Colo. App. 1988)).

Finally, Defendants argue that summary judgment is appropriate on Ms. Edgar's IIED claim because she cannot show "extreme and outrageous" conduct. ECF No. 96 at 19–20. The Court, again, does not agree. Defendants' argument rests of the hope that the Court will reject the continuing violation doctrine and limit the evidence to only that conduct that occurred after September 2021. Because the Court is permitting Ms. Edgar

---

[5] Defendants, in a single sentence, argue that Ms. Edgar's third claim for relief should be "dismissed alongside the first two." ECF No. 96 at 18. For the same reasons the Court finds that claims one and two should go to the jury, Ms. Edgar's third claim should also proceed to trial.
[6] Claim four is against Mr. Correy only.

to present evidence of her entire sexual relationship with Mr. Correy, the Court finds that there is a fact dispute concerning whether Defendants engaged in extreme and outrageous conduct.

* * *

To sum up, viewing the facts in light most favorable to Ms. Edgar, the Court finds that Defendants are not entitled to summary judgment on any claim for relief.

### B.   Plaintiff's Partial Motion for Summary Judgment (ECF No. 99)

Defendants intend to present an after-acquired evidence defense at trial. This defense permits Defendants to show that, had they learned of evidence of wrongdoing before Ms. Edgar's employment ended, Defendants would have discharged her on lawful and legitimate grounds. *Hallmon v. Advance Auto Parts, Inc.*, 921 F. Supp. 2d 1110, 1121 (D. Colo. 2013) (summarizing *McKennon v. Nashville Banner Publ'g Co.,* 513 U.S. 352, 115 (1995)). To prevail on this defense, an employer must show that "(1) it was unaware of the misconduct at the time it terminated the employee, (2) the misconduct was 'serious enough to justify discharge,' and (3) it would have actually discharged the employee had it known about the misconduct." *Id.* (quoting *Ricky v. Mapco, Inc.,* 50 F.3d 874, 876 (10th Cir. 1995)).[7]

The Court has no trouble finding that the presence of genuine disputes as to material facts compels submission of this issue to the jury. *Anderson*, 477 U.S. at 256. Among the most salient disputed facts are whether, and to what extent, Defendants knew

---

[7] Ms. Edgar argues that this defense merely limits an employer's damages. ECF No. 99 at 6. Defendants, on the other hand, argue that it also shields them from liability. ECF No. 114 at 9–10. The Court need not decide this issue now because it concludes that genuine material fact disputes warrant summary judgment inappropriate on the defense generally.

prior to Ms. Edgar's separation (1) about her sexually inappropriate comments to her subordinates and coworkers; (2) about Ms. Edgar's illegal drug use; (3) that Ms. Edgar allegedly was constantly high at work; (4) that Ms. Edgar allegedly attempted to lure AEI employees away to her new bookkeeping business; and (5) that Ms. Edgar inappropriately directed jobs to her husband's business for her personal gain.

Because of these genuine fact disputes, the Court is unable to determine whether Defendants were aware of Ms. Edgar's alleged misconduct while Ms. Edgar was still employed by AEI. The Court is also unable to determine whether Defendants would have actually terminated Ms. Edgar earlier had they known about her alleged misconduct. Therefore, the Court finds that summary judgment on Defendants' after-acquired evidence defense is inappropriate and should be decided by the jury.

## V.  CONCLUSION

Consistent with the above analysis, the Court DENIES the parties' competing summary judgment motions, ECF Nos. 96, 99.

DATED this 6th day of June 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge